UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: | ) In Proceedings Under Chapter 11 |
| | ) Hon. Kathy A. Surratt-States |
| **CERF BROS. BAG CO.,** | ) |
| | ) Case No. 09-51141-659 |
| Debtor | ) |
| | ) |
| | ) **DEBTOR'S AND THE OFFICIAL** |
| | ) **UNSECURED CREDITORS COMMITTEE OF** |
| | ) **CERF BROS. BAG CO. JOINT DISCLOSURE** |
| | ) **STATEMENT DATED SEPTEMBER 8, 2010** |
| | ) |

## I. INTRODUCTION

Cerf Bros. Bag Co., the Debtor and Debtor-in-Possession (hereinafter "Debtor") in the above-captioned Chapter 11 proceeding and the Official Creditors Committee of Cerf Bros. Bag Co. (hereinafter, the "Committee")(collectively, the "Plan Proponents"), provide this Disclosure Statement (the "Disclosure Statement") to all of Debtor's known Creditors and Interest Holders, to disclose information deemed to be material for such persons to be reasonably informed when voting to accept or reject the Plan of Reorganization Dated September 8, 2010. proposed by Debtor and the Committee ("the Plan"), a copy of which is attached hereto as Exhibit A.

In connection with this Disclosure Statement and the Plan, the Plan Proponents solicit and encourage acceptance of the Plan. Except as hereinafter provided, capitalized terms used herein have the meanings given them in the Plan.

The Court will set a hearing on Acceptance and Confirmation of the Plan, and prior thereto the Creditors may vote. As a Creditor, your acceptance is important. For the Plan to be accepted, of the Creditors who vote, at least two-thirds (⅔) in amount and more than one-half (½) in number of the Allowed Claims of each impaired Class of Creditors and Interest Holders must accept the Plan. The Court may confirm the Plan despite its nonacceptance by an impaired Class, if the Plan does not discriminate unfairly, and is fair and equitable with respect to each such nonaccepting Class.

## II. DISCLAIMERS

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN DETERMINING HOW TO VOTE ON THE PLAN.

NOTHING HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, NOR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR BE DEEMED CONCLUSIVE ADVICE ON THE LEGAL EFFECTS OF THE LIQUIDATION OF THE DEBTOR.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATION CONCERNING THE DEBTOR OR THE VALUE OF ITS ASSETS IS AUTHORIZED BY THE COURT.

COURT APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN OR A GUARANTY OF THE ACCURACY OF INFORMATION CONTAINED HEREIN.

YOU SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO AFFECT YOUR VOTE THAT ARE NOT CONTAINED HEREIN.

UNLESS ANOTHER TIME IS SPECIFIED, ALL STATEMENTS ARE MADE AS OF THE DATE HEREOF.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED HEREIN. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION IS WITHOUT ANY INACCURACY.

BE AWARE THAT THE DEBTOR AND THE COMMITTEE WANT THE PLAN TO SUCCEED. THE STATEMENTS MADE HEREIN, ALTHOUGH GENUINE IN BELIEF, MAY BE AFFECTED BY THIS INTEREST.

EACH PERSON ENTITLED TO VOTE ON THE PLAN IS STRONGLY URGED TO CONSULT WITH HIS FINANCIAL ADVISOR AND LEGAL COUNSEL BEFORE VOTING ON THE PLAN.

## III. VOTING INFORMATION

**THE COURT HAS SET THE HEARING ON ACCEPTANCE OF THE PLAN FOR _____, 2010 AT _____M. ST. LOUIS TIME. CREDITORS MAY VOTE ON THE PLAN BY COMPLETING THE ENCLOSED BALLOT AND MAILING IT TO COUNSEL FOR THE DEBTOR:**

**STEVEN GOLDSTEIN, ESQ.**
**GOLDSTEIN & PRESSMAN, P.C.**
**10326 OLD OLIVE STREET ROAD**
**ST. LOUIS, MO 63141-5922.**

**ALL BALLOTS MUST BE RECEIVED BY COUNSEL FOR THE DEBTOR ON OR BEFORE 4:30 P.M. CDT ON _____, 2010**

## IV. THE DEBTOR AND ITS HISTORY

A.  **Prior Operating History, Ownership, and Events Leading to Bankruptcy**

Debtor was founded in 1915 by brothers Erwin and Samuel Cerf as a liquor retailer and had its operations on Barton Street in the St. Louis warehouse district. Some time after the company's founding, its business transitioned from liquor retailing to the re-manufacturing of feedbags and dish towels. After a fire, Debtor moved its operations to a location near Brentwood and US 40/64, and in 1946 the company moved its location from St. Louis to New London, Missouri, which offered an attractive location for Debtor's manufacturing operations, which involved a 12,000 sq. ft. facility. Mr. EW Cerf had three daughters and their respective husbands joined the business. Debtor expanded its operations into manufacturing drop cloths, tarpaulins, and outdoor related travel bags.

As business grew the company built an office and distribution center at Brentwood and Manchester. By 1975 the company's facility in New London had increased in size to 60,000 sq. ft. and in 1995 the company added a 35,000 sq. ft. manufacturing facility in Vandalia, Missouri. In 2000 the company acquired a branding license from certain sportswear companies to manufacture and sell branded travel bags and daypacks. This line of business, with attendant slim margins necessitated contract labor with manufacturing facilities in Asia and by 2003 a substantial portion of Debtor's manufacturing operations were transitioned to Asia and the Vandalia faciltiy was closed. Debtor eventually closed the New London facility as well in an effort to manage costs and remain competitive.

By 2002, Debtor's continued growth required additional space and Debtor relocated its warehouse and distribution facility to a 120,000 sq. ft. location in Earth City, Missouri. Debtor's demonstrated success and growth with respect to the aforementioned branding license ultimately presented a challenge as the licensor took the business "in house" and did not renew the license when it expired in 2005, leaving Debtor unable fully recoup the "start-up" costs associated with the license.

The combination of a non-productive agreement with its licensor, the horrendous economy, the loss of $12,000,000 in revenue, an Earth City lease for space that was no longer needed, and a deteriorating relationship with Debtor's bank put the company in a position where it had significant overhead costs but falling cash flow.

In an effort to recapitalize the company, Debtor sought new investors. During 2007 the capital the company received from investors proved inadequate as these funds were only sufficient to cover ongoing debt service, leaving little for operations. Debtor continued to search for suitable investors in 2008 and had positive discussions with at least one investor, but the precipitous market downturn that year made it impossible for this investor to raise capital for the planned investment. Despite the failed investment, Debtor remained in business with the assistance of interim financing, but this situation proved unsustainable and by September of 2009 Debtor was unable to meet its obligations to its lenders. Debtor commenced these proceedings under Chapter 11 of Title 11 of the United States Code on November 2, 2009.

B.  **Summary of Significant Events in Bankruptcy.**

**Retention of Professionals:** Upon the commencement of these proceedings, Debtor sought and received authority to retain Goldstein & Pressman, P.C. as its counsel, and to retain, BSW Small Business Services, L.L.C. as accountants. In addition, Debtor sought and obtained authority to continue to provide salary and benefit payments to its employees. On or about February 1, 2010 the Official Unsecured Creditors Committee sought, and thereafter obtained permission to retain Lathrop & Gage, LLP as its counsel.

**Sale of Assets:** Contemporaneously with the commencement of these Chapter 11 proceedings, Debtor filed its *Motion for Order (A) Approving Entry By Debtor Into Agreement To Sell Virtually All of Debtor's Assets And Authorize Break Up Fee; (B) Authorizing The Sale Of Debtor' s Assets Free And Clear Of Liens, Claims, And Encumbrances; (C) Authorizing the Assumption and Assignment of Designated Executory Contracts; (D) Scheduling The Date, Time And Place For The Sale Of Debtor's Assets; (E) Approving The Form And Manner Of Notice Thereof; And (F) Approving Bidding Procedures* (the "Sale Motion") whereby Debtor sought authority for

the sale of substantially all of its assets and approval of procedures for such sale. On November 9, 2009 the Court entered an order approving the bidding procedures in the Sale Motion. Following the receipt of competing bids, Debtor conducted an auction and on December 11, 2009 the Court approved the sale of substantially all of Debtor's assets to AmeriBag, Inc. Thereafter, the parties closed the sale transaction and Debtor received the net sale proceeds.

**Claims:** On March 2, 2010 Debtor filed its ***Motion to Establish Deadline for Filing Proof of Claim or Proof of Interest***. The Court granted that motion on March 5, 2010 setting a deadline of May 4, 2010 as the deadline for the filing a proofs of claim or interest in these Chapter 11 proceedings. Debtor served a notice of said claims bar deadline to all creditors and parties in interest on March 6, 2010.

### V. THE DEBTOR IN POSSESSION

Among the reasons for the initiation of this proceeding was to preserve the Debtor's assets to permit a sale of some or all of said assets in an orderly manner, allowing Debtor to maximize the value of said assets and the recovery for creditors.

After confirmation, any assets of the Debtor which have not previously been liquidated will be sold or otherwise reduced to Cash by Debtor and the the net proceeds tendered to Charles W. Riske (the "Disbursing Agent"), who will distribute the Cash pursuant to the terms of the Plan.

### VI. SUMMARY OF THE PLAN

The following is a brief description of the anticipated claims and distributions under the Plan.

**28 U.S.C. Section 1930 Fees:** All fees required pursuant to 28 U.S.C. Section 1930 shall, if not previously paid in full, be paid in Cash on the Effective Date. After the Effective Date, the Disbursing Agent shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6) and shall serve on the Office of the United States Trustee all quarterly reports required by the Office of the United States Trustee until the case is closed. Debtor believes the amount of such fees is not material to any creditor's voting decision.

**Allowed Administrative Expense Claims:** Each holder of an Allowed Administrative Expense Claim, if not previously paid in full pursuant to a Final Order of the Bankruptcy Court, shall, unless the holder of such Allowed Administrative Expense Claim agrees to different treatment, receive Cash equal to the unpaid amount of such Allowed

Administrative Expense Claim upon the later of (i) the Effective Date or (ii) the first business day after a Final Order is entered regarding such Allowed Administrative Expense Claim. Such claims will generally consist of legal and professional fees of counsel for the Committee and of counsel for the Debtor.

**Class 1 Allowed Secured Claims:** The holders of all Class 1 Allowed Secured Claims shall retain all valid liens and security interests each such holder holds against the Debtor or the Estate prior to the Petition Date. With respect to any of Debtor's property which has not been sold as of the Effective Date and which serves as collateral for Allowed Secured Claims, such property will be surrendered to such holders of Allowed Secured Claims unless such holder and the Committee otherwise agree. The Plan Proponents believe there are no claims in this class.

**Class 2 Allowed Unsecured Priority Claims:** Each holder of an Allowed Unsecured Priority Claim shall, unless the holder of such Allowed Unsecured Priority Claim agrees to different treatment, receive Cash from the Claims Disbursement Account up to the amount of such Allowed Unsecured Priority Claim, without interest.

**Class 3 Allowed General Unsecured Claims:** The Disbursing Agent shall establish a Claims Disbursement Account which shall be used solely and exclusively to distribute a Pro Rata dividend to creditors of this class at such time as the total amount of all such Allowed Claims is determined and all assets of the Debtor have been liquidated. The Account shall be funded with the proceeds of any and all assets of the Debtor existing on the Effective Date, including the proceeds, if any, of causes of action, net of court costs and litigation expenses, including reasonable attorneys' fees.

**Class 4 Allowed Interests in the Debtor:** The holders of any Allowed Interests in the Debtor will receive nothing on account of such interest unless and until all creditors of a higher priority are paid in full. Debtor does not anticipate that there will be any funds available to provide a distribution to holders of an Allowed Interest in Debtor.

## VII. MEANS FOR EXECUTION OF THE PLAN

The cash distributions for the payment of (i) all 28 U.S.C. §1930 fees, and (ii) the holders of the Allowed Administrative Expense Claims shall be funded by the Cash on the Effective Date to the extent of such Cash. Distributions to the holders of the Allowed Unsecured Priority Claims and the holders of the Class 3 Allowed General Unsecured Claims shall be funded by the remaining Cash, the net proceeds of Debtor's asset liquidation, and the net proceeds of any causes of action, all of which shall be turned over to the Disbursing Agent.

## VIII. SUMMARY OF OTHER PROVISIONS OF THE PLAN

A. **Objections to Claims.**

Within ninety (90) days of the Effective Date, the Disbursing Agent may, if it so elects, file with the Bankruptcy Court objections to all claims which are disputed and which have not been resolve by an order of the Bankruptcy Court. Pursuant to the provisions of the Plan, Debtor may also file objections to proofs of claims.

B. **Treatment of Executory Contracts and Unexpired Leases.**

The Plan provides that all of Debtor's executory contracts and unexpired leases as of the Petition Date, which have not been specifically assumed or rejected pursuant to Section 365 of the Bankruptcy Code shall be deemed rejected on the Effective Date.

C. **Effect of Confirmation.**

The Confirmation Order will authorize the distributions and procedures outlined herein and set forth in the Plan. Although the Plan contemplates the complete liquidation of all of Debtor's assets and Debtor will not receive a discharge, Creditors' recoveries will effectively be limited to the amounts recovered through the liquidation of Debtors' assets.

The Plan Proponents may move to modify the Plan at any time prior to entry of the Confirmation Order. After entry of the Confirmation Order, the Plan Proponents may, with approval of the Bankruptcy Court, modify or amend the Plan in a manner which does not materially, adversely affect the interests of persons affected by the Plan without having to solicit acceptance of such modifications, and may take such steps as are necessary to carry out the purpose and effect of the Plan as modified.

After the Estate of the Debtor has been fully administered, the Bankruptcy Court shall close the case.

The Confirmation Order shall operate as an Order of the Bankruptcy Court directing the Debtor and any other necessary party to execute and deliver, or join in the execution and delivery, of any instrument required to effect the transfer of the Estate property, and to perform any other act that is necessary for the consummation of the Plan.

Notwithstanding any other term or condition of the Plan, disputed, liquidated and contingent claims shall be paid only upon allowance, in accordance with the Bankruptcy Code.

If any impaired Class under the Plan fails to accept the Plan, the Plan Proponents reserve the right to request the Bankruptcy Court to confirm the Plan and to automatically cause such modification of the Plan, if any, so as to enable the Plan to provide treatment of claims to satisfy the requirements of the Bankruptcy Code.

The Plan sets forth the only matters over which the Bankruptcy Court shall retain jurisdiction after the Confirmation Date and after the Effective Date.

D. **The Post-Confirmation Debtor.**

This Plan contemplates that Debtor shall exist post-confirmation solely for purposes of implementing the Plan. Upon full implementation of the Plan and entry of a Final Decree, Debtor shall cease to exist and all equity interests in the Debtor shall be canceled.

## IX. LIQUIDATION ANALYSIS

The plan constitutes a liquidation of all assets of the Debtor. No liquidation analysis has been prepared, nor is any reliable estimate of likely liquidation proceeds available. The Plan Proponents believe it is doubtful that unsecured claims will be paid in full.

The Plan Proponents believe that confirmation of the Plan is the most effective means to maximize the recovery to general unsecured creditors.

For the Bankruptcy Court to confirm the Plan, the Court must find that all creditors will receive under the Plan not less than they would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Plan Proponents believe the Plan meets this test.

## X. PROCEDURE FOR CONFIRMATION

At the hearing on confirmation of the Plan, the Bankruptcy Court will confirm the Plan only if the requirements of the Bankruptcy Code have been satisfied.

A. **Acceptance by Classes.**

At the hearing on the Confirmation of the Plan, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by the requisite amount and number of Allowed Claims in each impaired Class. Under the Bankruptcy Code, a class of creditors is impaired if its legal, equitable or contractual rights are altered by a proposed Plan of Liquidation.

If a Class is not impaired, each creditor in such unimpaired class is conclusively presumed to have accepted the Plan.

Class 1 is not impaired under the Plan and, therefore, is presumed to have accepted the Plan and is not entitled to vote on the Plan.

Classes 3 is impaired under the Plan. The holders of Allowed Claims in this class are entitled to vote for or against the Plan by completing the ballot mailed to them with this Disclosure Statement and returning it to the Debtor's counsel.

Since the holders of all Allowed Interests in the Debtor will neither receive nor retain any property under the Plan, Class 4 is conclusively presumed to have rejected the Plan.

B. **Disputed Claims Not Eligible to Vote.**

Each entity which holds a claim with respect to which an objection has been filed with the Bankruptcy Court, is not eligible to vote unless such entity files a proper pleading with the Bankruptcy Court pursuant to Rule 3018(a) of the Bankruptcy Rules and obtains a Final Order temporarily allowing its claim for the limited purpose of accepting or rejecting the Plan.

C. **Requisite Approvals.**

Under the Bankruptcy Code, an impaired Class of Creditors and each holder of a claim in such Class will be deemed to have accepted the Plan if the holders of at least two-thirds (⅔) in amount and more than one-half (½) in number of the Allowed Claims in such impaired Class for which completed ballots have been received have voted for acceptance of the Plan.

Even if Classes 3 and 4 vote not to accept the Plan, the Plan Proponents intend to request that the Bankruptcy Court confirm the Plan. To so confirm the Plan the Bankruptcy Court must determine, among other things, that the Plan does not discriminate unfairly and that it is fair and equitable with respect to each Class of impaired Allowed Claims that have not voted to accept the Plan.

D. **Best Interest of Creditors.**

To satisfy the requirements necessary for confirmation of the Plan, the Plan Proponents must establish, and the Bankruptcy Court must find, with respect to each Class of Allowed Claims under the Plan, that each holder of an Allowed Claim in that Class has either accepted the Plan or will receive or retain under the Plan, on account of such claim, property of a value that is not less than the amount that such holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Bankruptcy Court must compare the value of the distributions that would be made to each Class in a Chapter 7 liquidation to the value of the distributions to each Class under the Plan to determine if the Plan is in the best interest of each Class of Allowed Claims. The Plan Proponents believe that the Plan is in the best interest of the holders of all Allowed Claims and provides value to all of them equal to or in excess of the amounts that they would receive in a Chapter 7 liquidation of the Debtor.

E. **Feasibility.**

As a condition to confirmation of the Plan, the Bankruptcy Code requires the Bankruptcy Court to determine that confirmation is not likely to be followed by liquidation of the Debtor or the need for further financial reorganization, unless the Plan of in fact calls for the liquidation of the Debtor. This Plan calls for a liquidation; therefore, the Plan Proponents believe the Court need not make a factual finding of feasibility.

F. **Risk Factors.**

There exists a risk that funds from recovery of causes of action of the Estate will not be sufficient to cover the costs of such actions and the distribution to holders of Allowed Claims in Class 3 maybe reduced.

G. **Hearing on Confirmation of the Plan.**

The Plan Proponents will request that the Court set a date in St. Louis, Missouri for the hearing to determine whether the Plan has been accepted by the requisite number of creditors and holders of interests, and whether the Plan satisfies the requirements of the Code. The hearing may be adjourned from time to time without further written notice. The Plan Proponents will provide all creditors and parties in interest notice of the hearing on confirmation of the Plan, along with a copy of the Plan and this Disclosure Statement.

H. **Acceptance**.

Each impaired class must accept the Plan by the percentages described above, or the Court must find that the Plan complies with the "fair and equitable" test described below, with respect to any such non-accepting class.

I. **Fair and Equitable Test**.

If less than all the impaired classes accept the Plan, the Plan may nevertheless be confirmed by the Court provided that one impaired Class has affirmatively voted to accept the Plan. In order to obtain Confirmation over the objection of a non-accepting class, the Debtor must demonstrate to the Court that as to each non-accepting Class, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A plan does not discriminate unfairly if no class receives more than it is entitled to for its claim. The Code establishes different "fair and equitable tests" for Secured Creditors and Unsecured Creditors as follows:

1. **Secured Creditors**.

An impaired class of Secured Creditors must retain the liens securing their claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and each holder of a claim of such class must receive on account of such claim deferred cash payments the present value of which are at least equal to such creditor's allowed secured claim, or must otherwise receive the "indubitable equivalent" of the value of the interest in the Debtor's property upon which the Secured Creditor holds a lien. The holders of the Class 1 Allowed Secured Claims shall each retain valid liens and security interests they held against the Debtor or the Estate prior to the Petition Date.

2. **Unsecured Creditors**.

The "fair and equitable" test for Unsecured Creditors requires that (a) an impaired class of Unsecured Creditors must receive or retain under the Plan property of a value at least equal to the amount of the allowed claims; or (b) the holders of claims or interests junior to the claims of the dissenting class of Unsecured Creditors will not receive any property under the Plan. The Plan Proponents submit that the Plan satisfies this criteria by providing that, as to the Class 2 Allowed Unsecured Priority Claims and the Class 3 Allowed General Unsecured Creditors, no holder of a claim or interest junior to said claims will receive any payment or property on account of such claim or interest until said claims are paid in full.

S:\DOCS\Cerf Bros. Bag Co\Plan and Disclosure Statement\Disclosure Statement 9-8-2010.wpd

11

3. **Allowed Interests.**

Holders of an Allowed Interest in the Debtor must receive or retain under the Plan, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of the interest, before the holders of interests junior to the class may receive or retain under the Plan any property on account of such junior interests.

## XII. CONCLUSION

The Plan Proponents believe that acceptance and confirmation of the Plan is in the best interest of creditors, is feasible, and urges the holders of Allowed Claims voting on the Plan to vote to accept the Plan.

Dated at St. Louis this 8TH day of September, 2010.

**Official Unsecured Creditors Committee of Cerf Bros. Bag Co.**

By: _____

**Cerf Bros. Bag Co.**

By: *Jerry C Michelson*
Jerry Michelson

S:\DOCS\Cerf Bros. Bag Co\Plan and Disclosure Statement\Disclosure Statement 9-8-2010.wpd

12

### 3. Allowed Interests.

Holders of an Allowed Interest in the Debtor must receive or retain under the Plan, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of the interest, before the holders of interests junior to the class may receive or retain under the Plan any property on account of such junior interests.

## XII. CONCLUSION

The Plan Proponents believe that acceptance and confirmation of the Plan is in the best interest of creditors, is feasible, and urges the holders of Allowed Claims voting on the Plan to vote to accept the Plan.

Dated at St. Louis this __ day of August, 2010.

**Official Unsecured Creditors Committee of Cerf Bros. Bag Co.**

By: _[signature]_

**Cerf Bros. Bag Co.**

By: _____
Jerry Michelson

S:\DOCS\Cerf Bros. Bag Co\Plan and Disclosure Statement\Disclosure Statement 8-16-10.wpd

12